UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANDRES REY,

    Plaintiff,

v.

CHAD F. WOLF, ACTING SECRETARY,
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

    Defendant.
_____/

CASE NO.:

# COMPLAINT

Plaintiff, ANDRES REY, by and through undersigned counsel, hereby sues the Defendant, CHAD F. WOLF, ACTING SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") ("Defendant), and alleges the following:

## JURISDICTION, VENUE, PARTIES AND JURY DEMAND

1. This Court has jurisdiction of Plaintiff's claims herein pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and 42 U.S.C. § 2000(e) *et seq.*; 42 U.S.C. § 1981a and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*

2. This action involves claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00). Jurisdiction of this Court is invoked pursuant 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

4. Venue is proper pursuant to 28 U.S.C. § 1391 (e)(1) because the Defendant is a Federal Agency and/or Officer or Employee of the United States.

1

5. Plaintiff, at all times material to this lawsuit, was and is a resident of the State of Florida and was employed by the Defendant United States Department of Homeland Security ("DHS").

6. Plaintiff is a person who is disabled under the Rehabilitation act because he "(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services…" 29 U.S.C. § 705(20)(A) and is a qualified individual under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12111(8).

7. Chad F. Wolf, who is sued in his official capacity only, is the Acting Secretary of Defendant DHS. Defendant DHS is a "person" within the meaning of 42 U.S.C. § 2000e(a) and 42 U.S.C. 12111(7), and an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 42 U.S.C. 12111(5). Defendant DHS hired Plaintiff as an employee and is subject to the laws preventing discrimination in employment as set forth more fully in the Counts that follow. At all times pertinent to this action, Defendant DHS has been an "employer" as that term is used under the applicable laws identified above. Defendant DHS is Plaintiff's employer as it relates to these claims.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. For those counts that so require, all administrative requirements to filing this lawsuit have been satisfied: *to wit*, Plaintiff filed a formal administrative complaint based on reasonable accommodation discrimination with the Agency's Equal Employment Opportunity Commission ("EEOC") on January 29, 2015. The Administrative Judge issued a decision by summary judgment in favor of the Agency. Following this decision, Plaintiff filed a timely appeal on September 28, 2018. Plaintiff received a Final Agency Decision from the Agency/Equal Employment

Opportunity Commission on March 3, 2020, providing for a ninety (90) day right to sue deadline for civil actions in federal court.

9. Plaintiff timely files the instant complaint prior to the 90-day deadline.

## JURY DEMAND

10. **JURY DEMAND:** Plaintiff demands that all issues in this case be tried by a jury in accordance with the Seventh Amendment to the United States Constitution and Rule 38(b) of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

11. Plaintiff, Customs Border Patrol Officer Andres Rey ("Plaintiff" or "Officer Rey"), has served as a Customs and Border Protection Officer ("CBPO") since February 24, 2003 and currently is stationed for duty at the Miami Port of Entry, Miami, FL.

12. A CBPO is "an employee in the DHS occupying a position within the Customs and Border Protection Officer (GS-1895) job series (determined applying the criteria in effect as of September 1, 2007) or any successor position, and whose duties include activities relating to the arrival and departure of persons, conveyances, and merchandise at ports of entry." 5 C.F.R. § 831.1602.

13. Officer Rey's duties as a CBPO include detecting and preventing terrorists and instruments of terror from entering/exiting the United States; enforcing the laws that protect America's homeland through the detection, interdiction and apprehension of those who attempt to illegally enter or smuggle any person or contraband at the ports of entries or are found unlawfully present within their respective jurisdiction; and facilitating the orderly and efficient flow of legitimate trade and lawful travelers.

14. CBPO duties also include performing inspection, intelligence analysis, examination and law enforcement activities including apprehension, detention and arrest relating to arrival and

departure of persons, conveyances and merchandise at the port of entries. Officer Rey works on the Anti- Terrorism Contraband Enforcement Team (A-TCET).

15. In September 2007, Officer Rey sustained a total colon removal and reversal, with the installation of a "J" pouch, and he has had this condition since that time. Officer Rey also suffers from an immune system disorder as result of his medical condition and his major life activities are affected by the same which additionally exposes him to dehydration. Officer Rey's disability is not visible. Plaintiff describes his disabilities as suffering from ulcerative colitis and irritable bowel disorder.

16. Approximately in September, 2007, Plaintiff was placed on the Voluntary Leave Transfer Program, where he provided medical documentation that was reviewed and approved by Christopher Maston, Executive Director of Operations, ES-1895-00, assigned to CBP Head Quarters (who at the time was the Port Director assigned to the Miami Point of Entry).

17. From 2010-2013, Plaintiff had been assigned to Cargo (by way of bid and rotation). During this time, Plaintiff's chain of command was able to accommodate his needs after his surgery; therefore, he never requested an official reasonable accommodation.

18. In or about early 2012, Plaintiff recorded his medical requirements within the SAIMS system wherein he indicated that due to his "J" pouch, he could not be confined to small spaces.

19. In 2013, during the bid and rotation period, Plaintiff was assigned to the Anti-terrorism Contraband Enforcement Team. Plaintiff identifies his first- and second-line supervisors as SCBP Antonio Lozada, GS-1895-13 and Chief Henry Aponte (retired) ("Chief Aponte"), GS-1895-13, assigned to Miami Point of Entry.

20. On or about March 9, 2013, Plaintiff's Passport Certification had expired, and he was required to attend the training again. On May 9, 2013, he once again provided medical

documentation to Chief Aponte, requesting to be exempt from the training. Chief Aponte stated to Plaintiff that he would take care of it; however, he kept coming back asking for additional information.

21. In October 2014, Plaintiff received an email informing him that he was scheduled to attend the Passport Training that month. Chief Aponte advised Plaintiff that he needed to provide additional medical documentation that presented more details outlining his restrictions in order for him to be exempt from the training.

22. On November 5, 2014, Plaintiff submitted correspondence from his treating physician, a specialist, to Chief Henry Aponte, advising of his medical condition and of his immediate need for a reasonable accommodation as Plaintiff was required to avoid exposure to the traveling public, in order to safeguard his immune system; and therefore, Plaintiff needed to avoid passport control duties and associated training for this job function.

23. On November 18, 2014, Supervisory Customs and Border Protection Officer Leo Atkinson ("Atkinson"), who is not within the Plaintiff's chain of command, summoned him to an investigatory meeting, making reference to the physician's previously submitted correspondence, which apparently had been passed along to Chief Aponte, from Station Chief Pacheco. Atkinson began the meeting in a demeaning and hostile manner, claiming that the medical letter was "too general," in order to warrant further consideration. In addition, Atkinson further erroneously stated that the medical letter would disqualify the Plaintiff from further employment with DHS. Atkinson also stated that if the "appropriate letter," was not promptly produced, the Plaintiff would be scheduled for immigration training. Finally, two days later, on November 20, 2014, Atkinson was overheard discussing details of the Plaintiff's medical condition with Supervisory Customs and

Border Protection Officer Dawn Humes, commenting that the Plaintiff was purportedly "scamming," in order to be relieved of training requirements.

24. Plaintiff maintains that his medical note was provided to Chief Pacheco, in good faith; and only this manager had the need to know of the applicable medical condition. Instead, the medical note found its way to Chief Aponte; as well as to Supervisory Customs and Border Protection Officer Leo Atkinson. DHS should have some internal process for restricting the confidential information only to those management employees with a need to know; instead the information was disseminated outside of Plaintiff's chain of command.

25. Atkinson is not a medical review officer, nor was he within Plaintiff's chain of command; and he had no authorization and or role to review the Plaintiff's medical records, however Atkinson claimed to have the authority to determine whether or not the medical letter was sufficient; and whether Plaintiff would be required to attend passport training.

26. Passport training was scheduled for Plaintiff on at least two occasions; however, the requirement was placed in a "stand-by" status. The stand-by status has remained in effect, based upon the medical letter, provided by the Plaintiff to management.

27. Although passport training was never formally scheduled, on May 27, 2015, DFO Vernon Foret ("Foret") basically rejected the contentions contained in Plaintiff's reasonable accommodation request. DHS maintained that if Plaintiff wore a mask and gloves, he could be properly assigned to passport training, however this alleged reasonable accommodation was rejected by Plaintiff's treating physician.

28. Rather than provide Plaintiff with a reasonable accommodation in keeping with the recommendations of his treating physician, Defendant DHS primarily sought to piece together its own ad hoc solution which was wholly insufficient as it required Plaintiff to be exposed to an

environment which was hazardous to his health i.e. to physically attend the passport training at the Airport.

29. More specifically, Plaintiff's treating physician clearly indicated that the Plaintiff was in need of accommodations, namely, frequent bathroom breaks, due to flare ups in his condition, and avoidance of airborne pathogens.  With regard to the latter, Plaintiff's treating physician indicated it was not advisable for him to have frequent contact with the traveling public.  Further, Plaintiff's treating physician indicated that the wearing of gloves or a mask would not sufficiently protect and/or accommodate the Plaintiff.

30. On or about June of 2015, a medical review officer became involved in the reasonable accommodation process. Prior to this juncture, non-medical DHS personnel were making determinations on Plaintiff's request for a reasonable accommodation.

31. DHS failed to make a definitive and final ruling on Plaintiff's Request for a Reasonable Accommodation until December 21, 2015, wherein Plaintiff was left with an uncertain employment status for over one year wherein he continuously suffered from stress and anxiety awaiting a response from DHS regarding his request and leaving Plaintiff at risk.

32. Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of his actual or perceived disability and record of impairment.

33. All of this mistreatment as described hereinabove, is contrary to DHS's own policies regarding both harassment and discrimination.

34. Specifically, Defendant's Anti-Discrimination Policy (Program Statement 3713.25) states, "Management at all levels will take effective actions to eliminate any internal policy, practice, or

procedure that results in discrimination on the basis of race, color… physical or mental disability… or status as a parent." This is precisely the type of discrimination Plaintiff has been subjected to.

35. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

36. Plaintiff has retained the undersigned law firm as his attorney in this action and is obligated to pay reasonable attorneys' fees and all costs incurred in this action.

**COUNT I – VIOLATION OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701 *et seq.* AND THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12111**

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38. This is an action against Defendant for violation of the Rehabilitation Act ("the Rehabilitation Act" of 1973, 29 U.S.C. § 701 *et seq.* and the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12111.

39. § 794(a) of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States, as defined in § 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency…"

40. At all times pertinent hereto, Plaintiff has been a disabled person as defined by § 705(20) of the Rehabilitation Act and regarded as being disabled under the ADA, 42 U.S.C. § 12102(2)(C). At all times pertinent hereto, Plaintiff has been an "otherwise qualified individual" for purposes of the Rehabilitation Act.

41. Defendant DHS is liable for its failures as related to its denial of accommodations to Plaintiff, as its refusal to accommodate Plaintiff's needs constitutes a violation of the Act.

42. Defendant DHS discriminated against Plaintiff on the basis of disability. Specifically but not limited to, Defendant DHS subjected Plaintiff to a hostile work environment and refused to provide reasonable accommodations to Plaintiff. Such conduct by Defendant DHS has exacerbated Plaintiff's medical condition.

43. Defendant DHS's conduct constitutes an intentional violation of the prohibitions against discrimination, including failure to make reasonable accommodations contained in the Rehabilitation Act and ADA.

44. Plaintiff's disabilities have prevented him from participating in and benefitting from programs and services which, but for Defendant DHS's denial of a reasonable accommodation, could have been provided by Defendant to address Plaintiff's disabilities.

45. As a direct, proximate, and foreseeable result of the violations set forth above, Plaintiff has suffered an exacerbation of his physical and mental impairments, pain and suffering, loss of the enjoyment of life and other tangible and intangible damages.

46. These damages have occurred in the past, are occurring at present and will occur in the future. Defendant should be ordered to pay any attorneys' fees and costs associated with this count. Plaintiff is entitled to injunctive/equitable relief.

### COUNT II – UNLAWFUL RETALIATION PURSUANT TO THE REHABILITATOIN ACT, 29 U.S.C. § 504 AND PURSUANT TO ADA, 42 U.S.C. 12203

47. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

48. Defendant DHS is an employer as that term is used under the applicable statutes referenced above.

49. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported unlawful employment practices which adversely affected him under the statutes referenced above.

50. The foregoing unlawful actions by Defendant DHS were purposeful.

51. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant DHS and was the victim of unlawful retaliation, thereafter, as related in part above. The events set forth herein led, at least in part, to adverse employment actions against Plaintiff.

52. Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

53. As a direct and proximate result of Defendant DHS's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, loss of enjoyment of life and other non-pecuniary losses, lost wages, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally- available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorneys' fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances.

Dated June 1, 2020.

Respectfully submitted,

**FARROW LAW, P.A.**

Attorneys for Plaintiff
4801 S. University Drive
Suite 132
Davie, Florida 33328
Telephone:   (954) 252-9818
Facsimile:    (954) 252-9821
jay@farrowlawfirm.com
meera@farrowlawfirm.com


BY: /S/*JAY LEWIS FARROW*
      JAY LEWIS FARROW, ESQ.
      Florida Bar Number: 625213
      MEERA K. KOODIE, ESQ.
      Florida Bar Number: 1020242